# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

MATTHEW J. McGUINNESS,      )
                                      )
            Petitioner,      )
                                      )
      v.                    )         No. 4:11CV270 TCM
                                      )
AL LUEBBERS,              )
                                      )
            Respondent.    )

## MEMORANDUM AND ORDER

Matthew J. McGuinness (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a 2008 conviction following a jury trial. See 28 U.S.C. § 2254. Respondent filed a response [Doc. 7], including materials from the underlying state court proceedings.

This matter is before the undersigned United States Magistrate Judge for review and final resolution of the petition.[1] Before addressing the grounds for relief, the Court will determine whether the Court has jurisdiction to resolve Petitioner's petition due to notice from Petitioner that he now resides at a street address in the St. Louis, Missouri area, rather than at a state correctional facility. When Petitioner filed this habeas proceeding, he was incarcerated at the Farmington Correctional Center. "Because [Petitioner] was in the custody of the State of [Missouri] when he filed his habeas petition, the 'in custody' requirement of 28 U.S.C. § 2254 is satisfied" and this Court has jurisdiction "to entertain his petition" even

---

[1] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

though Petitioner may have been released from such custody during the pendency of this habeas proceeding.  **Beets v. Iowa Dep't of Corr. Servs.**, 164 F.3d 1131, 1133 n.2 (8th Cir. 1999) (citing Carafas v. LaVallee, 391 U.S. 234, 238-40 (1968)); see also **Jones v. Jerrison**, 20 F.3d 849, 852 n.1 (8th Cir. 1994) (citing Carafas, 391 U.S. at 238-39).  Under these circumstances, the Court has jurisdiction to resolve the petition.

Having carefully considered the record, including the parties' materials, and relevant legal authority, the Court finds that Petitioner's petition presents four grounds for relief, that ground one lacks merit, and that grounds two through four are procedurally barred.  The Court will, therefore, deny the petition without further proceedings.

## Background

On June 10, 2008, Petitioner was charged by information with several offenses that allegedly occurred on January 1, 2008, including driving while intoxicated, in violation of Mo. Rev. Stat. § 577.010, and driving while revoked, in violation of Mo. Rev. Stat. § 302.321.[2]  (Information, Legal File, Resp't Ex. A, at 8.)  By an amended information, these two charges included allegations that Petitioner had two prior alcohol-related driving-while-intoxicated offenses from incidents occurring on July 2, 1993, and July 23, 1995; and that

---

[2]  Petitioner was also charged with possession of a controlled substance in violation of Mo. Rev. Stat. § 195.202; possession of drug paraphernalia with intent to manufacture amphetamine, in violation of Mo. Rev. Stat. § 195.233; and attempt to manufacture a controlled substance, in violation of Mo. Rev. Stat. § 195.211, on January 1, 2008.  (Information, Legal File, Resp't Ex. A, at 9; Am. Information, Legal File Resp't Ex. A, at 11.)  By a second amended information, the latter charge was amended to a charge that Petitioner was in possession of a chemical with the intent to create a controlled substance, in violation of Mo. Rev. Stat. § 195.420.  (Second Am. Information, Legal File, Resp't Ex. A, at 28; see also Trial Tr., Resp't Ex. 1, at 14.)  The jury found Petitioner was not guilty of these offenses.  (Verdict Forms, Legal File, Resp't Ex. A, at 49-51.)

Petitioner was a prior and persistent offender. (Am. Information, filed Sept. 3, 2008, Legal File, Resp't Ex. A, at 10-11.) By a second amended information, Petitioner was charged with the same two offenses, with the second count changed by the addition of allegations that Petitioner had three prior driving-while-revoked convictions and the inclusion of one of Petitioner's prior alcohol-related driving convictions. (Second Am. Information, Legal File, Resp't Ex. A, at 27; <u>see</u> Trial Tr., Resp't Ex. 1, at 14-15.)

Trial was scheduled to begin on September 11, 2008. (Aug. 27, 2008 entry on docket sheet, Legal File, Resp't Ex. A, at 3.) The docket sheet reflects that, on August 28, 2008, Petitioner filed a motion to compel the production of discovery or in the alternative to impose sanctions. (Aug. 28, 2008 entry on docket sheet, Legal File, Resp't Ex. A, at 3.) That motion is not available in the record. In open court on September 3, 2008, Petitioner's counsel stated he filed a motion to compel lab results regarding the analysis of Petitioner's urine sample, which motion might be moot when the lab results were provided, and asked that it be taken up on Friday, the day the results were reportedly going to be provided. (Sept. 3, 2008, Hr'g Tr. in Trial Tr., Resp't Ex. 1 at 7-8, 10.) During that hearing, Petitioner's counsel also advised that the prosecutor had told him the "urinalysis is presumptively positive at this time, but it's not conclusive," and she hoped to have the results back by Friday. (<u>Id.</u> at 8.)

Three days before the trial date, Petitioner's counsel filed a motion seeking an order either in limine to exclude criminalist Jeremy Jones's testimony and lab report regarding the analysis of Petitioner's urine sample, or to continue the trial so that Petitioner could depose Jones regarding the testing of Petitioner's urine for drugs. (Pet'r Mot., Legal File, Resp't Ex.

A, at 17-18.) Counsel advised that he had received the lab report by facsimile that day. (Id.) The trial court heard the motion before voir dire on September 11th, at which time Petitioner's counsel clarified that he wanted to depose Jones and send the urine sample out for an independent test before Jones testified. (See Trial Tr., Resp't Ex. 1, at 20-23.) The prosecutor responded,

> the State informed [Petitioner's] counsel on Tuesday, September 2nd, that the lab report would be forthcoming. I understand it was mentioned in the report. [Petitioner's] counsel knew there was a urine sample taken. As soon as he brought it up, actually before he brought it up I believe we told him that report would be forthcoming. We then gave him the preliminary findings after I spoke to the criminalist over the phone a couple days later on September 5th. We got the – we transferred the report to [Petitioner's counsel] within hours of when the State received it. He knew there was a ur[i]nalysis done. It was no surprise to him. He[] has actually spoken with the criminalist before today. It's my understanding he spoke with the criminalist yesterday and had an opportunity to ask him all the questions that he wanted to . . . .

> THE COURT: All right. [Petitioner's counsel], anything further?

> [PETITIONER'S COUNSEL]: No, Judge.

> THE COURT: Well, I understand the motion. I think it's a little late when the case has been set for trial a couple of months.

> [PETITIONER'S COUNSEL]: The case has not been set for trial a couple months, Judge. This trial was actually moved up over my objection to September 11th.

> [PROSECUTOR]: Judge, the case goes back to [Petitioner's] first appearance when he waived arraignment in May of 2008. I believe he was arra[ign]ed in the circuit level the beginning of July and it was to be set beginning of August. [Petitioner's counsel] had ample opportunity to raise this issue.

> THE COURT: All right. It was originally scheduled for October 30th and then the State did file a motion to basically reset it, move it up because –

because of the request for disposition. But there has been ample time prior to the week of trial to request those things. I'm not inclined to continue the trial for an additional test when the person who did the test will be available for both direct and cross-examination. So the motion to exclude the criminalist, Jeremy Jones, and the lab report – well the lab report's not going to be sent to the jury any way. They may refer to it but it's not going to be included.

(<u>Id.</u> at 22-23.) The court also allowed Petitioner's counsel to speak with Jones before he testified. (<u>Id.</u> at 23.)

The court then found, after considering the State's exhibits and the parties' arguments, that Petitioner was a prior and persistent driving-while-intoxicated offender, which enhanced the charged driving-while-intoxicated offense to a class D felony; that the driving-while-revoked charge was elevated from a misdemeanor to a felony based on four of Petitioner's prior convictions;[3] and that Petitioner was a prior and persistent felony offender, which enhanced the maximum range of punishment "on all five counts." (<u>Id.</u> at 33-42.) The court also questioned Petitioner about his right and decision to testify. (<u>Id.</u> at 42-44.)

During trial, the State presented the testimony of five witnesses - John Malcolm, a lieutenant with the City of Wright City Police Department, (<u>id.</u> at 168-233); Eric Kessler, a trooper with the Missouri State Highway Patrol, who is a certified drug recognition expert (DRE) or a trooper trained to identify drug-impaired drivers (<u>id.</u> at 234-63); Jeremy Jones, a criminalist with the Missouri State Highway Patrol Crime Lab in Cape (<u>id.</u> at 264-87);

---

[3] The status of the driving-while-revoked charge as a misdemeanor or felony offense is not clear because, after the conclusion of trial and prior to sentencing, the trial court denied the State's offer to submit proof reportedly necessary to permit use of one of the prior convictions to elevate the driving-while-revoked offense from a misdemeanor to a felony under the relevant state statutory provision. (<u>See</u> Tr. of Dec. 2, 2008 Hr'g, part of Trial Tr., Resp't Ex. 1, at 414-17.)

James Burgio, a criminalist with the Missouri State Highway Patrol Crime Lab (id. at 288-96); and Chad Fitzgerald, a deputy with the Warren County Sheriff's Department, who has specialized training in drug investigations and the manufacture of methamphetamine (id. at 298-309). Petitioner also testified (id. at 324-62), and presented the testimony of Charles Fields, Petitioner's friend, who stated he drove Petitioner to a location in St. Louis County late on December 31, 2007, and dropped Petitioner off (id. at 310-20).

Lieutenant Malcolm testified that he stopped Petitioner's vehicle, a truck, during the early morning hours of January 1, 2008, after observing Petitioner drive into the oncoming lane of traffic several times; that, when he approached the truck, he smelled an odor he identified "as burnt marijuana," noted that Petitioner's "eyes were blood shot [and] watery" with constricted pupils, and found Petitioner slow to provide information and obtain his identification from his wallet. (Id. at 168-72.) As a result of these observations, Lieutenant Malcolm administered three field sobriety tests, which indicated that Petitioner was impaired. (Id. at 172-84.) At some point during their interaction, Lieutenant Malcolm retrieved a black leather jacket from the vehicle for Petitioner, because it was below freezing outside; searched it before handing it to Petitioner; and found a "standard U-100 insulin syringe" in an inside pocket. (Id. at 196-99.)

Another officer, Missouri State Trooper Bill Able, who had been called to the scene, administered a portable breath test, which did not indicate the presence of alcohol in Petitioner's blood. (Id. at 185.)

Petitioner was then arrested for suspicion of driving under the influence or in an impaired condition and for operating a motor vehicle with a revoked driver's license, and transported to the Warren County Sheriff's Department. (Id.; see id. at 216.)

Lieutenant Malcolm stayed at the scene and searched the truck. (Id. at 199-200.) He found, on the front passenger seat under clothing, a ten-count package of standard U-100 insulin syringes containing nine syringes. (Id. at 200-01.) Additionally, he found, under the driver's seat, a "glass smoking device with burnt residue," a plastic bag with what "appeared to [be] residue," and a "small plastic bag corner containing an orange powdered substance"; in a tool box in the bed of the truck, a "single burner electric plate" and a digital scale "with a powdered substance residue on [its] face"; and, in a duffle bag in the truck's passenger compartment, "a standard pill container which contain[ed] a large quantity of match box striker surfaces," "a dark maroon colored substance," men's clothing, toiletries, and "letters that were addressed to" Petitioner. (Id. at 201-13.) When Lieutenant Malcolm subsequently arrived at the Sheriff's Department he received from a staff member "plant-like material that was recovered from" Petitioner; and he obtained a urine sample from Petitioner. (Id. at 213-14, 216, 217-18.)

While Petitioner was at the Sheriff's Department, Trooper Kessler advised Petitioner of his rights under Miranda and evaluated Petitioner by administering a twelve-step test and the three field sobriety tests, by taking Petitioner's vital signs, by checking Petitioner's pupils' size, by looking for signs of drug ingestion - which resulted in finding "a green film down the center of [Petitioner's] tongue and . . . heat bumps [from inhaling something hot] on the

back of his tongue," as well as "a lot of open wounds" on Petitioner's right arm and two needle marks on Petitioner's arm, and by interrogating Petitioner about his drug use. (Id. at 186, 236-55.) As a result of his evaluation, Trooper Kessler opined that Petitioner "was under the influence of [a] narcotic analgesic [and perhaps using more than one drug] and was not able to safely operate a motor vehicle." (Id. at 256-58.)

Criminalist Jones tested Petitioner's urine sample and found it contained a "breakdown product of THC which is found in marijuana," methamphetamine, amphetamine, morphine, codeine, "[a] couple of anti-histamines," and "an anti-depressant called nortriptyline." (Id. at 267.) He classified those drugs, including the codeine and morphine, which he classified as "[n]arcotic anlagesics," and testified to their effects on individuals ingesting them; and stated that his report contained the results to which he had testified. (Id. at 267-81.) Jones's lab report was admitted into evidence, and, upon the jury's request, sent to the jury room. (Id. at 281, 407.)

Criminalist Burgio testified to testing several items of evidence, including the glass pipe found in the truck, which did not contain any controlled substance; the plant material seized from Petitioner, which was marijuana; a powder found in Petitioner's vehicle, that contained less than a gram of methamphetamine; and the maroon powder found in the duffle bag in Petitioner's vehicle, which tested positive for methamphetamine by "gas chromatography/mass spectrometry," but not by "screening tests." (Id. at 289-96.)

Deputy Fitzgerald testified about the methods of manufacturing methamphetamine, including the ingredients and supplies needed. (Id. at 299-309.)

During his testimony, Petitioner discussed his prior convictions, as well as his perspective on what happened in the hours before and after midnight of January 1, 2008, the prescribed medications he took, and the items found in the truck. (<u>Id.</u> at 324-51.) He explained that his license was revoked from 1993 until September 15, 2007, and he was unable to afford to take a course required before he could get the license reinstated after that date. (<u>Id.</u> at 325-27.) The vehicle he was driving on January 1, 2008, was a truck he had sold to someone, who had not made required payments and was not responding to Petitioner's efforts to contact him. (<u>Id.</u> at 326-34.) On New Year's Eve he received a call telling him where the truck was. (<u>Id.</u> at 334.) Fields drove him to the truck's location and Petitioner took the truck, with some of the purchaser's belongings in it, including a tool box and clothing. (<u>Id.</u> at 335.) At the time he was stopped on January 1, 2008, Petitioner was driving the truck to a friend's home in Warren County; he had planned to wait for the purchaser to call him to either get the rest of the money owed or keep the truck. (<u>Id.</u>) After the stop, when Lieutenant Malcolm retrieved a black leather jacket from the truck for Petitioner, a jacket in which a syringe was found (<u>id.</u> at 198), Petitioner told Lieutenant Malcolm that the jacket was not his, but instead a "green nylon coat" was his. (<u>Id.</u> at 340.) Petitioner also testified that he had been diagnosed with clinical depression and "ADD," and has taken medications, including "amphetamine salt," for those conditions "for years." (<u>Id.</u> at 342-44; 348-49.)

A jury found Petitioner guilty of the two counts, driving while intoxicated and driving while his license was revoked. (Verdict Forms, Legal File, Resp't Ex. A, at 47-48.)

The trial court subsequently sentenced Petitioner to a seven-year term of imprisonment on each of the two counts, with the sentences running concurrently. (Sentencing Hr'g Tr., Resp't Ex. F, at 10; Sentence and J., Legal File, Resp't Ex. A, at 59-61.) Prior to sentencing, Petitioner objected that references to certain prior arrests as set forth in the Sentencing Assessment Report (SAR) were incorrect. (See, e.g., Sentencing Tr., Resp't Ex. F, at 4-5.) The court said it would ignore approximately the first page and a half of the SAR reporting Petitioner's prior record, and found that, even ignoring those statements, the SAR advised that Petitioner had "at least 15 arrests, mostly convictions, in the last 14 years." (Id. at 9-10.)

On direct appeal, Petitioner raised one point of error: that the trial court violated Petitioner's rights to due process, a fair trial, and to present a defense, as guaranteed by the Sixth and Fourteenth Amendments, in overruling his motion to exclude a criminalist (Jones) and his lab report from trial, or in the alternative, to continue the case, because the criminalist's report was not provided to the defense until three days before trial. (Pet'r Br., Resp. Exh. B, at 10, 11.) Petitioner argued that this violation prejudiced him because that report and the related testimony "were the only direct evidence that he had controlled substances in his system at the time he was arrested." (Id.)

The Missouri Court of Appeals for the Eastern District of Missouri summarily affirmed the trial court's sentence and judgment in a per curiam order, accompanied by a memorandum sent only to the parties advising them of the reasons for the order. (Per curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Feb.

23, 2010, Resp't Ex. C.)  In denying Petitioner's point on appeal, the Missouri Court of

Appeals stated

> In his only point on appeal, [Petitioner] claims the trial court abused its discretion in overruling his motion to exclude Je[remy] Jones (hereinafter, "Witness") and his laboratory report from trial.  In the alternative, [Petitioner] alleges the trial court erred in not granting him a continuance to depose Witness and seek an independent urinalysis.
>
> Essentially, [Petitioner]'s claim is that the trial court abused its discretion in permitting the State's late endorsement of Witness. [Petitioner] argues that without the testimony of Witness and the laboratory report, the only evidence the State would have been able to present is the testimony of the various officers' observations of [Petitioner] on the night he was arrested. Hence, the State would have been unable to prove beyond a reasonable doubt that [Petitioner] was driving while intoxicated.
>
> Pursuant to [Mo. S. Ct.] Rule 23.01(e), it is within the trial court's discretion to permit the late endorsement of any witness after giving notice to the defendant.  In considering whether the trial court abused its discretion, this Court considers the following factors:
>
> > (1) Whether the defendant waived the objection;
> >
> > (2) Whether the state intended surprise or acted deceptively or in bad faith, with the intention to disadvantage the defendant;
> >
> > (3) Whether in fact [the] defendant was surprised and suffered any disadvantage; and
> >
> > (4) Whether the type of testimony given might readily have been contemplated.
>
> Moss v. State, 10 S.W.3d 508, 515 (Mo. banc 2000).  "The main consideration is whether the late disclosure of witnesses resulted in fundamental unfairness or prejudice to substantial rights of the defendant."  State v. Dowell, 25 S.W.3d 594, 610 (Mo. [Ct.] App. . . . 2000) (*quoting* State v. Thomas, 965 S.W.2d 396, 399 (Mo. [Ct.] App. . . . 1998)).

There is nothing in the record indicating the State intended to surprise, deceive, or act in bad faith to [Petitioner]'s disadvantage in endorsing Witness. [Petitioner] was arrested for driving while intoxicated on January 1, 2008, and at that time, he provided a urine sample for analysis. The State contacted [Petitioner's] counsel on September 2, 2008, stating that a laboratory report would be forthcoming as soon as it was prepared. On September 5, 2008, the State contacted [Petitioner's] counsel with the preliminary laboratory results. The State received the final laboratory report on September 8, 2008, and faxed it to [Petitioner's] counsel within hours. [Petitioner's] counsel spoke with Witness on September 10, 2008, and was given an opportunity to speak with Witness again prior to trial the next day. [Petitioner] knew the report was being prepared and its preliminary results; there was no surprise. Further, this sort of testimony should have been contemplated by [Petitioner] since he provided a sample of urine to be tested and was on trial for driving while intoxicated.

After the trial court allowed the late endorsement of Witness, [Petitioner] sought a continuance to depose Witness and receive an independent urinalysis. The trial court is granted broad discretion in its decision to grant or deny a continuance. State v. Clark, 263 S.W.3d 666, 669 (Mo. [Ct.] App. . . . 2008), overruled on other grounds State v. Daws, 311 S.W.3d 806 (Mo. 2010) (en banc)]. "Reversal is not warranted unless there is a very strong showing that there was an abuse of discretion resulting in prejudice." State v. Salter, 250 S.W.3d 705, 712 (Mo. banc 2008).

[Petitioner] alleges the continuance would have aided him in preparing a rebuttal to Witness' testimony and laboratory report. However, this Court fails to see how further investigation into Witness' testimony would have aided the preparation of [Petitioner's] defense since [Petitioner] questioned Witness prior to trial and knew the laboratory results.

[Petitioner] next claims Witness' testimony is the only scientific link demonstrating he was driving while intoxicated. Hence, [Petitioner] believes he was prejudiced by Witness' testimony because the State would have been unable to prove its case against him otherwise.

A person is guilty of driving while intoxicated "if he [or she] operates a motor vehicle while in an intoxicated or drugged condition." [Mo. Rev. Stat.] Section 577.010. "'Intoxication may be proven by any witness who had a reasonable opportunity to observe the defendant's physical condition, and intoxication is usually evidenced by unsteadiness on the feet, slurred speech, lack of body coordination and impaired motor reflexes.'" State v. Cain, 287

S.W.3d 699, 706 (Mo. [Ct.] App. . . . 2009) (*quoting* State v. Scholl, 114 S.W.3d 304, 307 (Mo. [Ct.] App. . . . 2003)).  "Furthermore, the State is not required to admit evidence of the results of a chemical test to prove a defendant's intoxication.  It is the fact, not the degree, of intoxication that is the significant issue to consider." State v. Edwards, 280 S.W.3d 184, 189 (Mo. [Ct.] App. . . . 2009) (internal citations omitted).

In this case, there were two qualified police officers who testified at [Petitioner]'s trial.  The first officer observed [Petitioner] driving.  The officer followed [Petitioner] and saw him cross into the other lane of traffic several times.  After pulling [Petitioner] over, the officer detected the smell of burnt marijuana as he approached [Petitioner]'s vehicle. [Petitioner] retrieved his Missouri identification card, after an "inordinate amount of concentration[],"[] and the officer discovered [Petitioner]'s driving privileges were revoked.  The officer testified [Petitioner]'s responses to his questions were slow and inarticulate.  The officer observed [Petitioner]'s eyes to be bloodshot and watery, and his pupils were constricted. [Petitioner] attempted, and failed, three field sobriety tests.  This officer also searched [Petitioner]'s vehicle.  He discovered ten syringes, a glass smoking device with burnt residue, part of a plastic bag with resid[u]e, a single burner plate, a digital scale with powdered residue, a pill bottle with match box strikers, and a bag with an orange powdered substance and a dark maroon powdered substance.

The second officer, a drug recognition expert, encountered [Petitioner] at the Sheriff's Department following [Petitioner]'s arrest.  This officer performed a twelve-step drug evaluation of [Petitioner], and he repeated the field sobriety tests.  Once again, [Petitioner] failed the field sobriety tests.  The officer took [Petitioner]'s pulse three times during his evaluation and it was below average. [Petitioner]'s body temperature was extremely low and he had open wounds on his arm, including what the officer believed were needle marks.  The officer observed [Petitioner]'s pupils to be constricted severely and his tongue had a green film down the center with heat bumps on the back of it.  Further, [Petitioner] told this officer that he was on a lot of drugs.

"Witness credibility is a matter reserved for the jury."  State v. Williams, 277 S.W.3d 848, 853 (Mo. [Ct.] App. . . . 2009).  Hence, the jury may believe all, some or none of the testimony of the witnesses presented at trial.  Edwards, 280 S.W.3d at 189.  The testimony of the two officers was sufficient to find [Petitioner] guilty of driving while intoxicated beyond a reasonable doubt.  Point denied.

The judgment of the trial court is affirmed.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Feb. 23, 2010, Resp't Ex. C, at 2-5 (twenty-eighth alteration in original).)  The state appellate court issued its mandate in Petitioner's direct appeal on March 18, 2010.  (Mandate, dated Mar. 18, 2010, Resp't Ex. D.)

Petitioner did not pursue review in the Missouri Supreme Court or United States Supreme Court, and did not  file a motion for post-conviction relief under Missouri Supreme Court Rule 29.15.  (See, e.g., Pet'r Pet. at 3, 4 [Doc. 1 at 2, 3].)

In February 2011, Petitioner timely filed his federal habeas petition.  In that petition, Petitioner seeks relief on four grounds.  First, Petitioner contends that his attorney "was unable to obtain evidence [regarding the results of testing his urine sample] prior to the trial." For his second ground for relief, Petitioner urges the prosecution failed to prove Petitioner was a persistent offender, with respect to the driving-while-revoked offense, in that the prosecutor failed to provide necessary proof regarding one of the prior driving-while-revoked convictions.  Third, Petitioner contends that there were "false allegations [in] the sentencing advisory report" used by the sentencing court to determine his sentence.  Finally, in his fourth ground, Petitioner contends that his trial attorney provided ineffective representation in that he "failed to obtain evidence that should have been presented at [Petitioner's] trial and "waited much to[o] long to file[] a motion to compel" production of the evidence used against Petitioner at trial so that the evidence was not made available prior to trial.

In general, Respondent counters that the last three grounds for relief are procedurally barred and may not be addressed on their merits; and, in any event, all of the grounds for relief lack merit.

## Discussion

Respondent characterizes ground one as presenting a claim that "the trial court erred in allowing the urine sample evidence, because it was provided to the defense too late." (Resp't Response at 3, 7 [Doc. 7 at 3, 7].) As such, Respondent contends that Petitioner presented that claim in his direct appeal and the state appellate court reasonably resolved the issue on the merits in a manner that was not contrary to, but was consistent with, clearly established federal law. In his petition, Petitioner alleges that he presented ground one in his direct appeal, see Pet'r Pet. at 6 [Doc. 1 at 5], but did not present grounds two through four on direct appeal, see id. at 8, 9, and 11.

For the Court to consider the merits of ground one, the claim must be the same as the sole claim Petitioner pursued in his direct appeal. This is because a petitioner seeking habeas review must have fairly presented the substance of his claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. **Wemark v. Iowa**, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (citing, in part, to Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)); accord **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). Specifically, to satisfy this fair presentation requirement, Petitioner must "raise[] the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas

petition." **Wemark**, 322 F.3d at 1021 (quoting <u>Joubert v. Hopkins</u>, 75 F.3d 1232, 1240 (8th Cir. 1996) (internal quotation marks and citations omitted)). Due to the parties' characterization of ground one as the claim Petitioner pursued in his direct appeal, the Court will construe ground one as presenting only a claim that the trial court violated Petitioner's constitutional rights by denying a continuance and admitting into evidence Jones's testimony and lab report because Petitioner did not receive the lab report until three days prior to trial. Because Petitioner presented this claim, as construed, on direct appeal and the state appellate court addressed the merits of this claim, the Court will consider the merits of Petitioner's first ground for relief.

Before addressing the merits of that ground, the Court will discuss Respondent's contention that grounds two through four are procedurally barred and may not be considered on their merits.[4] If the Court finds any of these grounds not procedurally barred, then the Court will consider the merits of the claim or claims along with the merits of ground one.

<u>Procedural Default (Grounds Two through Four).</u> Ground two may be characterized as a claim of prosecutorial error or trial court error in applying a state statute setting forth requirements for proof of prior convictions; ground three is a claim of trial court error, and ground four is a claim that Petitioner's trial attorney provided ineffective assistance of

---

[4] Because Respondent does not challenge any of Petitioner's grounds for relief on the basis that the ground is not cognizable in this federal habeas proceeding, the Court will address each ground assuming arguendo that it presents a federal constitutional claim cognizable in this proceeding. By doing so, the Court is not resolving whether or not each of Petitioner's grounds for relief is cognizable here.

counsel.  Respondent argues that grounds two and three are defaulted because Petitioner did not present them in his direct appeal or in a post-conviction proceeding; and that ground four is defaulted because Petitioner did not pursue the claim in a post-conviction proceeding.

As stated before, to avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.  **Wemark**, 322 F.3d at 1020-21; accord **Baldwin**, 541 U.S. at 29.  "A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts which he is attempting to raise in his federal habeas petition."  **Wemark**, 322 F.3d at 1021 (quoting Joubert, 75 F.3d 1232 at 1240.  Claims that have not been fairly presented to the state courts are procedurally defaulted.  **Id.** at 1022 (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

Missouri requires the raising of constitutional claims at the first available opportunity.  See **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001).  Alleged trial court errors, including constitutional claims of trial court error, such as the claims in grounds two and three, or of cognizable prosecutorial error, which may be present in ground two, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review."  **State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord **State v. Twenter**, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be

litigated in a post-conviction proceeding").  "If the allegations of trial error are constitutional violations, they are not cognizable [in a post-conviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal."  **Clark**, 859 S.W.2d at 789; accord **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); **Allen v. State**, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995) (per curiam). Therefore, if an alleged violation of the constitution through trial error is not raised on direct appeal, the claim is defaulted absent exceptional circumstances justifying the failure to raise the error on direct appeal, and, only if such circumstances are shown, may the matter then be pursued in a post-conviction proceeding.

In Missouri, in addition to allowing pursuit of an allegedly unconstitutional trial error that falls within the "exceptional circumstances" exception to raising such an error on direct appeal, a post-conviction motion proceeding is the exclusive procedure for pursuing in state court any ineffective assistance of counsel claim; a motion court's decision on such a motion is subject to appeal; and successive post-conviction motions are not permitted.  Mo. S. Ct. Rule 29.15(a), 29.15(k); 29.15(l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Importantly, any claim that should have been but was not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion is procedurally defaulted and may not be considered in a federal habeas proceeding.  See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding that claims not presented in an amended Rule 29.15 post-conviction motion or appeal from the denial of that motion are procedurally defaulted).

Because Petitioner did not file a post-conviction motion, none of the claims in grounds two through four were presented to the state courts through a post-conviction motion or post-conviction appeal.

Under the circumstances, the claims set forth as grounds two through four of Petitioner's federal habeas petition are procedurally defaulted because they were not raised in Petitioner's direct appeal or in any post-conviction proceeding.

Absent a showing of either cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); accord **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] ... 'impeded [his] efforts to comply with the State's procedural rule.'" **Maples v. Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). There is no exhaustive catalog of the objective impediments, and the precise contours of the cause requirement have not been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Throughout his petition, Petitioner asserts that an attorney was appointed to represent him in the state court proceedings and did not raise the defaulted issues. (See Pet'r Pet. at 8, 9, and 11 [Doc. 1 at 7, 8, and 10].) The Court will assume Petitioner asserts that his attorney's failure to raise the issues before the state courts constitutes cause for his failure to pursue the issues in the state court proceedings.

While the Court is not aware of applicable federal authority stating that conduct of a trial attorney or a direct appeal attorney may constitute cause, a post-conviction attorney's conduct may, under limited circumstances, constitute cause for a petitioner's failure to present the state courts with a claim the petitioner pursues in a federal habeas proceeding. See, e.g., **Martinez v. Ryan**, 132 S. Ct. 1309 (2012) (post-conviction counsel); **Maples**, supra (post-conviction counsel). Here, however, Petitioner did not file a post-conviction motion; so, no conduct of a post-conviction attorney may establish cause for Petitioner's failure to pursue in post-conviction proceedings the claims in grounds two through four of his habeas petition. Therefore, Petitioner's apparent effort to establish cause through his attorney's conduct is unavailing.

Petitioner does not assert or demonstrate any other "cause" that would allow the Court to consider the merits of his procedurally defaulted claims.

No cause having been established, the Court does not need to address the prejudice element. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc). Under the circumstances, no cause and prejudice exists to allow consideration of the merits of Petitioner's procedurally defaulted claims in grounds two through four.

To the extent a "miscarriage of justice" may allow a federal habeas court to address the merits of a procedurally defaulted claim, Petitioner has not demonstrated the applicability of that exception either. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). To establish actual innocence, Petitioner must provide new evidence and make a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)); accord **House v. Bell**, 547 U.S. 518, 536-39 (2006) (Schlup standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Here, Petitioner has not shown or referred to any new evidence of his actual innocence. Therefore, Petitioner has not shown a miscarriage of justice supporting consideration of the merits of any of his procedurally defaulted claims.

Under the circumstances, the Court will not further consider the merits of the procedurally barred claims in grounds two through four. The Court will consider the merits

of the claim in ground one, as construed, because it was presented to, and addressed on the merits by, the Missouri Court of Appeals during Petitioner's direct appeal.[5]

Merits - Standard of Review (Ground One). In ground one, as construed by the parties and Court, Petitioner claims the trial court violated his constitutional rights in denying a continuance and admitting into evidence Jones's testimony and lab report, because Petitioner did not receive the lab report until three days prior to trial. Respondent replies that this claim lacks merit due to the state appellate court's correct and reasonable resolution of the issue based on clearly established federal law.

The Missouri Court of Appeals found that, under the circumstances, the denial of the continuance was proper in that there was no surprise, deceit, or bad faith in the State's failure to provide Petitioner's counsel with Jones's lab report about the urinalysis more than three days before trial. In particular, the appellate court noted that the State had advised Petitioner's counsel about nine days before trial that a report would be coming, then disclosed the preliminary test results about six days prior to trial, and faxed Petitioner's counsel a copy of the final laboratory report on September 8, 2008, within hours of the State's receipt of that report. Moreover, that court found, Petitioner's counsel spoke with Jones the day before trial and was allowed to speak with him again prior to the start of trial the next day; and Petitioner

_____

[5] To the extent ground one presents a claim regarding the analysis of Petitioner's urine sample that differs from the issue Petitioner presented in his direct appeal, Petitioner did not pursue any such claim in state court, either in his direct appeal or through a post-conviction motion proceeding. Therefore, any such claim is procedurally defaulted, falls within the discussion of the procedural default of grounds two through four, and, for the same reasons, cannot be addressed on its merits in this federal habeas proceeding.

knew the report was being prepared and "should have contemplated" the possibility of such a report, because Petitioner had provided the urine sample and was on trial for driving while intoxicated.

With respect to Petitioner's challenge to the admission of Jones's testimony and lab report, which he characterized as the only scientific link demonstrating he was driving while intoxicated, the state appellate court noted that, by state statutory provision, proof of intoxication may be provided by someone who has observed a defendant's physical condition, including "unsteadiness on the feet, . . . lack of body coordination and impaired motor reflexes," and proof by a chemical test was not necessary. Here, that court found, there was testimony from two qualified police officers who observed Petitioner on January 1, 2008, at the time of and shortly after his arrest. One of those officers had observed Petitioner while driving and after the traffic stop; had given Petitioner three field sobriety tests which Petitioner did not pass; and had searched Petitioner's vehicle, finding syringes, a "glass smoking device with burnt residue," a plastic bag with residue, a single burner plate, a digital scale with powder residue, a pill bottle containing match box strikers, an orange powdered substance, and a dark maroon powdered substance. The second officer, a drug recognition expert, met with Petitioner at the Sheriff's Department upon Petitioner's arrest; repeated the field sobriety tests and administered other tests, which showed that Petitioner was impaired; took Petitioner's vital signs throughout the course of their meeting; and observed Petitioner's physical condition, including severely constricted pupils, a tongue with a green film in the center and heat bumps at the back, and open wounds on his arm, including what the officer

thought were needle marks. Upon noting that witness credibility is for the jury to resolve, the Missouri Court of Appeals concluded that the two officers' testimony was sufficient to find Petitioner guilty beyond a reasonable doubt of the driving while intoxicated offense, and therefore Petitioner was not prejudiced by admission of Jones's testimony and lab report.

In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions." **Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 413 (2000). If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011)), <u>cert. denied</u>, 134 S. Ct. 85 (2013). A state court decision is an unreasonable

application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; <u>see</u> <u>also</u> **id.** at 413. "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011) (quoting <u>Harrington</u>, 131 S. Ct. at 784, 786). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38 (2011) (relying on <u>Cullen</u>, <u>supra</u>); <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**,

387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting Jones v. Luebbers, 359 F.3d 1005, 1011-12 (8th Cir. 2004)).  Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels.  **Smulls**, 535 F.3d at 864-65.

With respect to Petitioner's challenge to the denial of his request for a continuance, "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process."  **Ungar v. Sarafite**, 376 U.S. 575, 589 (1964); see also **Morris v. Slappy**, 461 U.S. 1, 11 (1983) (noting trial courts have broad discretion on matters of continuances); **Swindler v. Lockhart**, 885 F.2d 1342, 1350 (8th Cir. 1989) (same).  "Habeas relief for the trial court's decision to deny a continuance is available only where the petitioner can show that the denial of the motion 'was so egregious that it was fundamentally unfair.'  Wade v. Armontrout, 798 F.2d 304, 307 (8th Cir. 1986)."  **Whitmill v. Armontrout**, 42 F.3d 1154, 1158 (8th Cir. 1994).  "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request

for delay' may give rise to a violation of due process." **Morris**, 461 U.S. at 11-12 (quoting

Ungar, 376 U.S. at 589). "There are no mechanical tests for deciding when a denial of a

continuance is so arbitrary as to violate due process. The answer must be found in the

circumstances . . . , particularly in the reasons presented to the trial judge at the time the

request is denied." **Ungar**, 376 U.S. at 589.

These principles apply when a state court denies a criminal defendant a continuance

based on the government's belated disclosure of evidence. See, e.g., **Middleton v. Roper**,

498 F.3d 812, 815-17 (8th Cir. 2007) (addressing the government's disclosure of witnesses

shortly before trial; and upholding the denial of habeas relief due to the denial of a request

for continuance based, in part, on a determination the state court's finding that "defense

counsel already had information about the witnesses through previous hearings or police

reports" was not rebutted by the petitioner, and the petitioner had "identified no specific

instance in which additional time for preparation would have improved . . . the fairness of

the trial"). This habeas case is similar to **Middleton**. While the State belatedly disclosed the

results of the urinalysis and produced the lab report pertaining to that analysis in the ten days

prior to the trial date, Petitioner and his counsel knew Petitioner had provided a urine sample

at the time of his arrest approximately nine months earlier; knew or should have known it

was likely that the sample would be analyzed due to the driving-while-intoxicated charge;

received notice of the preliminary test results, as well as a copy of the final lab report, several

days prior to trial; had an opportunity to speak with the criminalist performing the test and

authoring the report prior to trial; and, at the time the continuance request was denied, the

trial court gave Petitioner the opportunity to speak with the criminalist again before he testified. Under the circumstances, the state courts' decisions to deny and affirm the denial of Petitioner's request for a continuance do not entitle Petitioner to habeas relief.

While the Missouri Court of Appeals did not cite to United States Supreme Court case law in resolving this issue, it did consider relevant principles by noting that fundamental unfairness or prejudice to the Petitioner's substantial rights is the main consideration and that the trial court has broad discretion when considering the denial of a continuance request. The state court also addressed the circumstances pertinent to the requested continuance by considering the chronology of the State's pretrial disclosures regarding the test results and Jones's lab report, as well as Petitioner's opportunity to speak with Jones, before concluding that Petitioner had not demonstrated how further investigation of Jones or his lab report would have aided in preparing Petitioner's defense.

The record supports the state appellate court's findings. Nothing in the record discloses either trial court conduct that was "'so egregious that it was fundamentally unfair,'" **Whitmill**, 42 F.3d at 1158 (quoting Wade, 798 F.2d at 307), or "an unreasoning and arbitrary 'insistence [by the trial court] upon expeditiousness in the face of a justifiable request for delay,'" **Morris**, 461 U.S. at 11-12 (quoting Ungar, 376 U.S. at 589). The state appellate court's decision upholding the denial of Petitioner's request for a continuance correctly and reasonably applied clearly established federal law; and did not involve an unreasonable application of the facts.

Petitioner also challenges the admission of Jones's testimony and lab report at trial, after the denial of Petitioner's motion for a continuance.  "'[F]ederal habeas corpus relief does not lie for errors of state law.'  Lewis v. Jeffers, 497 U.S. 764, 780 (1990)."  **Estelle v. McGuire**, 502 U.S. 62, 67 (1991) (concluding that  the admission of prior act evidence did not violate the petitioner's right to due process).  "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process."  **Rousan v. Roper**, 436 F.3d 951, 958 (8th Cir. 2006) (internal quotation marks omitted) (quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993)).  "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the [petitioner] of due process."  **Bounds v. Delo**, 151 F.3d 1116, 1119 (8th Cir. 1998) (internal quotation marks omitted) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1997)).  The petitioner must show that there is a reasonable probability that the challenged trial court error affected the outcome of the proceeding, "that absent the alleged impropriety the verdict probably would have been different."  **Anderson v. Goeke**, 44 F.3d 675, 679 (8th Cir. 1995).  The burden to establish a state court's evidentiary ruling constituted a due process violation is "much greater than that required on direct appeal and even greater than the showing of plain error."  **Mendoza v. Leapley**, 5 F.3d 341, 342 (8th Cir. 1993) (per curiam).

Here, Petitioner has failed to meet his burden of establishing a due process violation in the trial court's admission of Jones's testimony and lab report.  As the state appellate court concluded, the testimony of the two officers, Malcolm and Kessler, was sufficient to prove Petitioner guilty of driving while intoxicated on January 1, 2008.  Those officers' testimony regarding Petitioner's driving, physical condition, slowed responses to requests, and inability satisfactorily to pass the administered tests, along with Malcolm's testimony regarding the items found in the inside pocket of the jacket prior to Petitioner's arrest, on Petitioner upon his arrest, and in the search of the truck Petitioner was driving, supports the jury's conclusion that Petitioner was guilty of the driving-while-intoxicated offense, when considered in light of Burgio's testimony regarding the analysis of the plant material found on Petitioner and the powders found in the truck Petitioner was driving.

Petitioner has not established either that the admission of Jones's testimony and lab report was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive [Petitioner] of due process," **Bounds**, 151 F.3d 1119, or that, absent that testimony and evidence, he would not have been found guilty of driving while intoxicated.  The record supports the state court's factual findings regarding this issue.  Although the state appellate court did not expressly mention clearly established federal law at the time of that court's decision, the resolution of Petitioner's direct appeal resulted in a decision that was not contrary to and did not involve an unreasonable application of clearly established federal law.

### Conclusion

After careful consideration, the Court concludes the petition should be denied. Grounds two through four, as well as ground one, other than the claim in ground one that Petitioner pursued on direct appeal, are procedurally defaulted. Petitioner has failed to establish either cause and prejudice or a miscarriage of justice sufficient to avoid that procedural default and to permit this Court's consideration of the merits of those claims. The remaining claim in ground one, that the trial court violated his constitutional rights in denying a continuance and admitting into evidence Jones's testimony and lab report because Petitioner did not receive the lab report until three days prior to trial, is without merit.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED** without further proceedings.

A separate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2014.